FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ SEP 2 8 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHARLES NIELSEN,

    Plaintiff,

  - against -

MICHAEL R. BLOOMBERG, Mayor – NYC;
MICHAEL A. STOCKER, M.D., Chairperson
NYC-HHC; CHRISTOPHER CONSTANTINO,
Executive Director, Elmhurst Hospital; ELAINE A.
RABIN, M.D.; SYLVIA TSCHENYAVSKY, M.D.

    Defendants.

------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-1073 (ENV) (LB)

**VITALIANO, D.J.**

*Pro se* plaintiff Charles Nielsen sues Drs. Elaine Rabin and Sylvia Tschenyavsky pursuant to 42 U.S.C. § 1983, alleging they violated his substantive due process rights by providing him constitutionally inadequate medical care when they attended to him at Elmhurst Hospital Center while he was in the custody of the New York City Police Department. Rabin, the only remaining defendant who was properly served, has moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment under Rule 56.[1] The motion is granted to the extent that Nielsen's § 1983

---

[1] All defendants other than Rabin and Tschenyavsky were dismissed by the Court on June 1, 2011. (*See* Dkt. Entry No. 4.) Further, the record reflects that Tschenyavsky has not yet been served with the complaint despite a recent attempt to do so. Because this Order dismisses the complaint for failure to state a claim, the Court need not consider whether dismissal of Tschenyavsky is alternatively warranted under Federal Rule of Civil Procedure 4(m).

1

claim is dismissed with prejudice and any state claims are dismissed without prejudice to refiling in a court of competent jurisdiction.

## Background[2]

Nielsen alleges that on March 17, 2008 members of the NYPD severely beat him and then transported him to Elmhurst Hospital Center in Queens. Nielsen further alleges that, at Elmhurst, his treating doctors failed to provide him with adequate medical care, thus exacerbating his injuries.[3] At the hospital, Nielsen complained of severe pain in his shoulder and stated that his nose "felt like it was broken." Further, he had "multiple abrasions in [his] facial areas." Nielsen admits that the doctors conducted a physical examination of the "aforementioned areas," but asserts they improperly declined to provide X-rays, CT-scans, or MRI tests or to prescribe any treatment. He also asserts that the doctors incorrectly diagnosed him as having only mild bruising and incorrectly suggested he was malingering. After examining plaintiff, the doctors released him back into the custody of the police, "with a statement that [he] was alert and oriented, and [his] level of pain and discomfort was at '2/10'. . . and [he] was ambulatory. . . .

---

[2] The background facts are drawn from plaintiff's pleadings and are considered true for purposes of this motion unless otherwise indicated.

[3] Plaintiff has two other actions pending in this district, one against the officers who allegedly beat him on the night at issue in this case, *Nielsen v. Bloomberg, et al.*, Docket No. 11-CV-999 (ENV)(LB) ("the docket '999 action"), and another against officers who allegedly beat him about one month earlier, *Nielsen v. Bloomberg, et al.*, Docket No. 11-CV-806 (ENV) (LB). Although all three actions were originally filed *pro se*, counsel has since appeared for plaintiff in the other two actions, but not in this one—despite that this action and the docket '999 action seek recovery for the same physical injuries and rely on some of the same allegations. Further, unlike this action, the other two actions have proceeded to discovery, which is currently scheduled to complete this fall. That Plaintiff's counsel has not taken on representation in this case too speaks volumes. A viable exacerbation claim, of course, could complicate, if not compromise, the causality argument Nielsen will advance in the docket 999 action.

2

[with a] discharge plan . . . for [re-evaluation] within one week." Nielsen alleges the doctors did not do more immediately "despite the fact that they stated in their triage report that [he] screamed when lightly touched when [his] shoulder was touched." But, Nielsen's account is contextually incomplete. The notes actually state, "[Nielsen] initially sleeping when approached, screams when shoulder lightly tapped to wake him up."[4] (Dkt. Entry. No. 22-2 at 7.)

Plaintiff goes on to allege that since the claimed beating, he has been "beset with a series of [a]ilments requiring ongoing surgeries and medical attention." Specifically, he (1) has had two surgeries on his nose; (2) still requires additional reconstructive and cosmetic surgery; (3) has been declared legally deaf in one ear; (4) has reduced hearing in the other ear; (5) wears a hearing aid in each ear; (6) has no feeling in his "right hand, thumb, and pinky"; and (7) has permanent scarring on his face. Further, he alleges his right shoulder has an "abnormal appearance" and that MRI and X-ray images taken since the incident reveal a "slap type labral tear," a fractured collar bone, and distorted right arm. Finally, the lack of treatment, he asserts, has caused him "mental health issues." He seeks $50 million in compensatory and punitive damages.

## Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[4] The Court relies on this portion of the triage report as a document that plaintiff relied on heavily in drafting the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

544, 555, 127 S. Ct. 1955, 1964 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions'. . . will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted). On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

Where, as here, the plaintiff is not represented by counsel, the complaint must be construed liberally and interpreted to raise the strongest arguments that it suggests, *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)), no matter how inartfully pleaded. *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). That the *pro se* complaint must be construed liberally is particularly true when the complaint alleges civil rights violations. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). In addition to giving a liberal reading, a court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint "gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation omitted).

Discussion

Section 1983 authorizes a civil claim for damages against persons acting under color of state law who deprive another person of a right provided by federal law.[5] *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). A prisoner is entitled to redress under § 1983 for a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment when he is subjected to an "unnecessary and wanton infliction of pain" caused by a government official's "deliberate indifference" to "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). When such a deliberate indifference claim arises in the context of pretrial arrest and detainment, as is the claim here, the claim against state actors is evaluated under the Due Process Clause of the Fourteenth Amendment, but it is subjected to the same test applied to Eighth Amendment deliberate indifference claims. *Caiozzo v. Koreman*, 581 F.3d 63, 69, 70-72 (2d Cir. 2009).

Deliberate indifference is manifested in medical treatment when two conditions are met: (1) the plaintiff experienced a sufficiently serious deprivation of care; and (2) the official acted with a sufficiently culpable state of mind. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). The first prong of this standard requires an objective inquiry into the reasonableness of the care provided as well as the extent of harm any inadequacy has caused or likely will cause. *Id.* at 280. The second inquiry is subjective and examines whether the official acted or failed to act, "while actually aware of a substantial risk that serious inmate harm will result." *Id.* The mental state required to satisfy the deliberate indifference standard "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

---

[5] Elmhurst is a City institution and Rabin does not dispute she was acting under color of state law.

It requires that the doctor "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Accordingly, the official has a non-actionable mental state if he harbors the sincere belief that his conduct posed no risk of serious harm, or merely an insubstantial risk of serious harm, even if that belief is objectively unsound. *Salahuddin*, 467 F.3d at 281.

Nielsen's § 1983 claim fails because it does not allege defendants had the requisite mental state. *See Zaire v. Dalsheim*, 698 F.Supp. 57, 59 (holding that to state an Eighth Amendment claim, "[a]t a minimum, there must be "at least some allegation of a conscious or callous indifference to a prisoner's rights" (internal quotations and citation omitted)). Indeed, the complaint is literally silent about the mental state of the defendants. Further, and far more importantly, the complaint does not allege facts making plausible that defendants had the required mental state. Plaintiff pleads, in essence, (1) that he complained of pain to his shoulder, back, nose, and face; (2) was actually examined; (3) was diagnosed with mild bruising; (4) was not then and there given electronic diagnostics that he wanted; but (5) was diagnosed with serious injuries at some later date. Plaintiff does aver he "screamed" when lightly touched. Yet, assuming for argument's sake that the triage note suggests a failure to treat him properly at that moment, Nielsen's averment still misrepresents the very document that he purports records that information. The document actually states he screamed when he was being awoken from sleep. This single scream as plaintiff was roused from deep slumber while awaiting emergency room treatment cannot make plausible that the doctors knew treatment beyond what they provided was likely required to avoid serious injury. *See generally Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic

6

techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."). Based on the complaint, the triage notes, and discharge plan, all before the Court now, that sort of insufficient treatment claim is the best Nielsen could hope for in any repleading. It is not nearly enough to state a viable § 1983 claim.

Viewed with liberality, the complaint, and the triage notes and discharge plan he relied on to draft it, alleges the most Neilsen can claim—merely that the doctors examined him and diagnosed him, obviously subject to second-guessing, with mild bruising, without giving any indication that the doctors knowingly subjected him to a substantial risk of serious harm when they discharged him into police custody without other immediate treatment but with a discharge plan directing his reevaluation within a week. Nielsen's complaint, accordingly, does not state a plausible deliberate indifference claim. More significantly, all of the treatment he subsequently received, as well as the future treatment he claims he needs, fall within the open-ended intendment of defendants' discharge plan directing timely re-evaluation of Nielsen's medical condition. Accordingly, Nielsen's only federal claim must be dismissed for failure to state a plausible claim.

In opposition to Rabin's motion, Nielsen alleges facts not present in his complaint. Liberally construing that opposition as supplementing the complaint, it alleges (1) that after Nielsen described his injuries, "defendant only performed a cursory examination and allowed herself to be influenced by the actions and conduct of the Police Officer's [sic] who brought plaintiff to the emergency room"; (2) the officers "informed defendant (incorrectly so) that plaintiff had attacked a woman Police Officer and that he should be ignored and left alone"; (3) Rabin acted "in concert with the New York City Police"; and (4) Rabin "chose to ignore

plaintiff's repeated complaints concerning his health." (Plaintiff's Opposition. at 4.) These allegations, guided by the roadmap of defects in the claim set forth in defendant's motion to dismiss, do not formally amend a complaint, *see Wright v. Ernst and Young*, 152 F.3d 169, 168 (2d Cir. 1998), and ordinarily would not be considered in determining whether Nielsen has stated a plausible claim. The new allegations, moreover, given the actual treatment provided by the defendant doctors as described in the triage notes, and the discharge plan, which expressly prescribed re-evaluation and the further treatment it might require, do not cure the deficiencies of the formal complaint nor provide any indication that plaintiff might be able to yet again amend his complaint to state a plausible deliberate indifference claim. Consequently, with plaintiff stymied by such futility, the Court will not grant leave to amend.

## Conclusion

For all the foregoing reasons, defendant's motion to dismiss is granted to the extent that all federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over any state law claims and thus any such claim is dismissed without prejudice to its refiling in a state court of competent jurisdiction. The Clerk of Court is directed to enter judgment and to close this case.

The Clerk is further directed to (1) mail a copy of this Memorandum and Order to plaintiff at his last known address of record and (2) note the entry of this Memorandum and Order on the docket of related case 11-CV-999 (ENV) (LB) with notice to all counsel appearing in that case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED

Dated: Brooklyn, New York
September 26, 2012

                                            s/Eric N. Vitaliano
                                            ERIC N. VITALIANO
                                            United States District Judge